**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LISA ANN SAUNDERS ) | 3:07-cv-0405-HDM (VPC) |
| Plaintiff, ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
|  ) | **OF U.S. MAGISTRATE JUDGE** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner, ) | |
| Social Security Administration, ) | |
|  ) | October 6, 2008 |
| Defendants. ) | |

This Report and Recommendation is made to the Honorable Howard D. McKibben, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for remand (#13). Defendant opposed and filed a motion to affirm the decision of the Administrative Law Judge ("ALJ") (#14). For the reasons set forth below, the court recommends that plaintiff's motion for remand (#13) be denied and defendant's cross motion to affirm the commissioner's final decision (#14) be granted.

**I. ADMINISTRATIVE PROCEEDINGS**

Plaintiff Lisa Ann Saunders ("plaintiff") was found to be disabled as of July 4, 2002 based on a diagnosis of bipolar disorder. *Id*. On February 3, 2005, the Social Security Administration ("SSA") determined that plaintiff was no longer disabled as of February 1, 2005, and thus no longer entitled to disability benefits. This determination was upheld upon reconsideration (AR 38-45). Plaintiff then requested a hearing before an Administrative Law Judge, and on July 6, 2005, plaintiff testified before ALJ, Daniel G. Heely (AR 335-356 (transcript)). On March 9, 2007, the ALJ found the plaintiff's disability had ended as of February 1, 2005 (AR 9-19). Plaintiff requested administrative review (AR 7), but the Social Security Administration Appeals Council denied review on July 13, 2007 (AR 4-6). Having exhausted all administrative remedies, plaintiff filed a complaint for judicial review on October 25, 2007 (#4). Plaintiff

1  requests that this court issue an order reversing the decision of the ALJ, and remanding with
2  instructions that the ALJ conduct a "full and fair hearing at which [plaintiff] can have a
3  representative aid her in developing her case" (#13, p. 10).

## II. BACKGROUND

Plaintiff was born on January 23, 1962, and was forty-four years old at the time of her hearing (AR 342). Plaintiff's highest level of completed education is high school. *Id*. Plaintiff has worked as a bank teller, as an assistant in a bank loan department, as an auditor assistant, and as an assistant to a bank president (AR 350). Plaintiff also worked as an assistant to a property manager (AR 352). Plaintiff suffers from bipolar disorder and was found disabled in 2002. After undergoing treatment for almost three years, the Social Security Administration determined that plaintiff's condition had improved and that she was no longer disabled and could resume working (*see* AR 126-138 (plaintiff's 2004 Daily Activities Questionnaire), 139-162 (plaintiff's disability appeals)). The ALJ found that plaintiff's disability had ended as of February 1, 2005, because he found that as of that date, plaintiff had the residual functional capacity to perform work that existed in significant numbers in the national economy (AR 18). Specifically, the ALJ made the following findings:

> 1. The most favorable medical decision finding that the claimant was disabled is the determination dated November 19, 2002. This is known as the "comparison point decision" or CPD.
>
> 2. At the time of the CPD, the claimant had the following medically determinable impairments: bipolar symptoms of suicidal, compulsive and impulsive behaviors. These impairments were found to result in the residual functional capacity of moderate restrictions of activities of daily living; moderate difficulty in maintaining social functioning; moderate to marked difficulty in maintaining concentration, persistence and pace with episodes of decompensation; difficulty in interacting with family members and an inability to sustain a schedule or a workweek.
>
> 3. Through February 1, 2005, the date the claimant's disability ended, the claimant did not engage in substantial gainful activity (20 C.F.R. 404.1594(f)(1)).
>
> 4. The medical evidence establishes that the claimant did not develop any additional impairments after the CPD though February 1, 2005. <u>Thus the claimant continued to have the same impairments that she had at the time of the CPD.</u>

2

> 5. As of February 1, 2005, the claimant did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1525 and 404.1526).
>
> 6. Medical improvement occurred as of February 1, 2005 (20 C.F.R. 404.1594(b)(1).
>
> 7. After careful consideration of the entire record, the undersigned finds that, as of February 1, 2005, the claimant had the residual functional capacity to perform a range of light work as follows: lift/carry 20 pounds occasionally and 10 pounds frequently; sit/stand/walk for 6 hours each; perform simple repetitive tasks; and, can have occasional public contact.
>
> 8. The claimant's medical improvement is related to the ability to work because it resulted in an increase in the claimant's residual functional capacity (20 C.F.R. 404.1594(c)(3)(ii)).
>
> 9. As of February 1, 2005, the claimant's impairments were severe (20 C.F.R. 404.1594(f)(6)).
>
> 10. As of February 1, 2005, the claimant was unable to perform past relevant work (20 C.F.R. 404.1565).
>
> 11. On February 1, 2005, the claimant was a younger individual age 18-44 (20 C.F.R. 404.1563).
>
> 12. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).
>
> 13. Beginning on February 1, 2005, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).
>
> 14. As of February 1, 2005, considering claimant's age, education, work experience, and residual functional capacity, the claimant was able to perform a significant number of jobs in the national economy (20 C.F.R. 404.1560(c) and 404.1566).
>
> 15. The claimant's disability ended as of February 1, 2005 (20 C.F.R. 404.1594(f)(8)).

(AR 13-19) (emphasis in original).

///

///

### III. STANDARD OF REVIEW

The court must uphold the decision of an administrative law judge if the ALJ properly applied the correct legal standards and his findings of fact are supported by substantial evidence in the record. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); 42 U.S.C. § 405(g). "Substantial evidence" has been defined as "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala,* 10 F.3d 678, 679 (9th Cir. 1993); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *See Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), *citing Smolen*, 80 F.3d at 1279. "To determine whether substantial evidence exists [the court must] look at the record as a whole, considering both evidence that supports and undermines the ALJ's findings. However, if the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citations omitted). The ALJ alone is responsible for determining credibility, and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

### IV. DISCUSSION

Plaintiff argues that the ALJ failed to properly obtain plaintiff's waiver of her right to representation by not fully explaining to plaintiff how a representative could assist her at the hearing. Plaintiff asserts that this failure prejudiced plaintiff because the ALJ did not fully and fairly develop the record to take into consideration plaintiff's exertional impairment or any possible side effects of plaintiff's medications, and that the ALJ failed to pose an adequate hypothetical question to the vocational expert (#13). Defendant's position is that there was substantial evidence to indicate medical improvement, and that the ALJ adequately informed plaintiff of her right to representation. Defendant also argues that the ALJ fully and fairly developed the record and that it is plaintiff who has the ultimate burden to produce evidence of a continuing disabling mental impairment, of a severe physical impairment, or of any side effects of medical impairing her ability to work, which she failed to do (#14).

   A. **Legal Framework**

Pursuant to the Social Security Act, the Secretary has adopted regulations which establish

4

a formalized, eight-step sequential evaluation process to determine whether a claimant's disability continues. *See* 20 C.F.R. § 404.1594(f). The Administrative Law Judge considers:

1. whether the claimant is engaging in substantial gainful activity;

2. if the claimant is not engaging in substantial gainful activity, whether he or she has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; if the claimant does, her disability will be found to continue;

3. whether medical improvement has occurred; medical improvement is any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that the claimant was disabled, as shown by an improvement in the symptoms, signs, or laboratory findings associated with the impairment (20 C.F.R. § 404.1594(b)(1);

4. if there has been medical improvement, whether it is related to the claimant's ability to work; medical improvement is related to work if it results in an increase in the claimant's capacity to perform basic work activities (20 C.F.R. § 404.1594(b)(3)). If it does, the analysis proceeds to step six;

5. whether an exception to medical improvement applies, if it was found at step (3) that there has been no medical improvement or if it was found at step (4) that the medical improvement was not related to the claimant's ability to work. There are two groups of exceptions (20 C.F.R. § 404.1594(d) and (e)). If one of the first group of exceptions applies, the analysis proceeds to the next step. If one of the second group exceptions applies, the claimant's disability ends. If none apply, the claimant's disability continues;

6. whether all the claimant's current impairments in combination are severe. If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled. If they do, the analysis proceeds to the next step;

7. whether the claimant can still perform past relevant work, based on an assessment of the claimant's residual functional capacity based on all the claimant's current impairments. If the claimant can do such work, the disability will be found to have ended;

8. if the claimant cannot do past relevant work, whether the claimant can do other work based on her residual functional capacity assessment and considering her age, education, and past work experience. If the claimant can perform other work, the disability will be found to have ended. If not, the disability will be found to continue.

5

20 C.F.R. § 404.1594(f)(1)-(8).

Social Security disability benefits claimants have the burden of proving disability. However, once a claimant has been found to be disabled, a presumption of continuing disability arises in her favor. The Secretary then bears the burden of producing evidence sufficient to rebut this presumption of continuing disability. *Bellamy v. Secretary of Health & Human Services*, 755 F.2d 1380, 1381 (9th Cir. 1985) (internal quotations omitted).

**B.     The validity of plaintiff's waiver of her right to representation.**

**1.     Law**

Social Security Administration regulations provide that the Administration will "include with the notice of [a determination or decision that is subject to the administrative review process] information about your options for obtaining an attorney to represent you in dealing with us. We will also tell you that a legal services organization may provide you with legal representation free of charge if you satisfy the qualifying requirement applicable to that organization." 20 C.F.R. § 404.1706. The absence of counsel alone is not sufficient ground for remand. *Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir. 1981). Lack of counsel does not invalidate a hearing and warrant remand unless the plaintiff can "demonstrate prejudice or unfairness in the administrative proceedings." *Id*.

**2.     Analysis**

Plaintiff argues that her waiver of her right to representation at the hearing was invalid because the ALJ failed to explain to plaintiff how a representative could assist her at the hearing and that this lack of representation prejudiced her case (#13, p. 3). Defendant counters that the Commissioner adequately informed plaintiff of her right to representation as required by SSA regulations, and that the ALJ properly and fully advised plaintiff as to how a representative could help her at the hearing (#14, p. 4-6).

The court first notes that the SSA fulfilled its duty under section 404.1706 by including in the Notice of Reconsideration decision the following:

> "You can have a friend, lawyer, or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless your win your appeal. Your local Social Security office has a list of groups that can help with your appeal." (AR 32).

Additionally, at the beginning of her hearing, the ALJ canvassed plaintiff concerning her right of representation as follows:

> **ALJ:** If you want to postpone your hearing one time to try to find a lawyer or non-lawyer, then I will postpone the case for you. There may be offices like Legal Aid or other similar offices that could give you a free lawyer or non-lawyer if you qualify financially or there might be private lawyers or non-lawyers who can represent you. Sometimes a private representative will handle a case based on what's called a contingency fee agreement which means you do not have to pay them any money unless they first get money for you. And usually they charge you around 25% of what they get for you up to a maximum of about $5300. If you do find a representative, that person can be with you when you speak to the Judge and help you explain your case to the Judge and the representative can help you look for more records if we don't have everything needed for a decision. Later of after the hearing is completed and the decision is ready to be sent to you, then we mail the decision out to your address and if there's anything in the decision you do not like or you do not agree with, you do have a right to appeal to the next level from here. That's called the Appeals Council level. After that, you also have a right to start a Federal Court law suit if you want to do that. And you have those additional rights even if you go ahead with your hearing today even if you do not have a representative help you. So my first question right now is do you want to have your hearing today without a lawyer or other person help you or do you want to postpone the hearing one time to try to find a lawyer or other representative? And that's up to you, ma'am. Whatever you'd like to do.
>
> **CLMT:** I'd like to just go with today's appointment. I –
>
> **ALJ:** Do you feel in any way that I'm trying to force you not to have a representative here today?
>
> **CLMT:** No, sir.
>
> **ALJ:** So, I'm just going to make a statement for our recording that as far as the hearing today, you are freely and knowingly giving up your right to have a lawyer or other representative for today. Is that what you want to do?

7

**CLMT:** Yes, sir.

**ALJ:** There may be offices in your community. You can check in the phonebook later or perhaps Ms. McDonald has a list of those, of Legal Aid or other programs just in case you do decide you want to try to find a representative later on....

(AR 337-38).

Notwithstanding this interchange, plaintiff claims that the ALJ failed to explain "the manner in which an attorney can aid in the proceedings." The court disagrees.[3] Plaintiff cites to Seventh Circuit precedent that has adopted this standard, but fails to point to any Seventh or Ninth Circuit case law to explain the meaning of this language. Based on the record cited above, this court finds that the ALJ did explain how a representative could aid plaintiff in her hearing (*See* AR 337 ("[a representative] can be with you when you speak to the Judge and help you explain your case to the Judge and the representative can also ask questions of any witnesses and the representative can help look for records if we don't have everything needed for a decision....")). Therefore, the ALJ obtained a valid waiver from plaintiff.

### C. The ALJ's duty to develop the record

#### 1. Plaintiff's additional medical records

"The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty extends to the represented as well as to the unrepresented claimant." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal citations omitted). However, if a claimant is unrepresented, the ALJ's duty is heightened, making it "incumbent upon the ALJ to scrupulously and

---

[3]Plaintiff cites to *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994), for the proposition that an ALJ must to explain the following to a pro se claimant in order to insure a valid waiver: "(1) the manner in which an attorney can aid in the proceedings; (2) the possibility of free counsel or a contingency arrangement; and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of fees." While this standard may apply in the Seventh Circuit, it is not binding on this court. Plaintiff has not cited, nor has the court found, any Ninth Circuit precedent that adopts the first requirement. Further, plaintiff fails to point to any law in any Circuit that explains the meaning of the phrase "the manner in which an attorney can aid in the proceedings," and thus has failed to demonstrate that the ALJ's explanation to plaintiff was deficient.

8

conscientiously probe into, inquire of, and explore for all the relevant facts." *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992), *citing Cox v. Califano*, 587 F.2d 988, 990 (9th Cir. 1978). The ALJ must "conduct an appropriate inquiry" if he or she finds that the record is "inadequate to allow for proper evaluation of the evidence" or if the evidence is ambiguous. *Tonapetyan*, 242 F.3d at 1150. "In cases of mental impairments, this duty is especially important. 'Because mentally ill persons may not be capable of protecting themselves from possible loss of benefits by furnishing necessary evidence concerning onset, development should be undertaken in such cases to ascertain the onset date of the incapacitating impairment.'" *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991), *citing* SSR 83-20.

In *Tonapetyan*, the Ninth Circuit found that an ALJ can discharge the duty to develop the record in several ways, including: "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id*.

Plaintiff contends that the ALJ failed to develop the record because he did not follow up by obtaining medical records and incorporating them into the record. At the hearing, the ALJ had all of plaintiff's medical records through June 2005 (AR 339). Plaintiff's cessation date was February 1, 2005. The ALJ asked plaintiff to obtain medical records related to both her bipolar disorder and arthritis after this date (AR 339 and 348), and he faxed her a form to give to her health care providers. From the record, it appears that plaintiff gave a form to at least one hospital, as it was returned by Mental Health Medical Associates (*see* AR 330; based on the treatment dates listed on the form, it appears that Mental Health Medical Associates is the private psychiatrist plaintiff referred to in her testimony (AR 339)). Additionally, the ALJ left the record open after the hearing to allow for supplementation (AR 341), thus fulfilling his duty to develop the record, as described in *Tonapetyan*.

Plaintiff claims that she may not have been able to obtain her medical records because "it may have been entirely possible that a mental health provider would not have provided those records to her...[because] a patient is not entitled to obtain a copy of his/her records if the

psychiatrist has made a specific entry to the contrary in the client's records" (#13, p. 6). However, this argument is undercut in two ways. First, plaintiff never points to any evidence that demonstrates that she, personally, was unable to obtain a copy of her medical records, or that there were any specific entries her physicians made, which suggest that she was not entitled to view her records. Second, plaintiff never had to actually obtain a copy of her records in order to submit them to the ALJ. The ALJ merely asked her to have the medical records sent directly to him along with the form. Further, the ALJ had all of plaintiff's medical records through June 2005, well after her cessation date. Thus, the ALJ was able to evaluate plaintiff's condition as of the cessation date, which is what he was required to do. *See* AR 92-2(6). In sum, the ALJ "discharged his duty of developing the record" by leaving the record open for supplementation and there is substantial evidence supporting the ALJ's finding of no disability.

### 2.     Plaintiff's exertional impairment

SSA regulations require consideration of the combined effect of all of a claimant's impairments in the determination of disability "without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523.

Plaintiff asserts that the ALJ failed to develop the record and take into consideration plaintiff's exertional impairment. Plaintiff herself stated that her exertional impairment, arthritis, was "nothing" (AR 328). Further, when the ALJ asked plaintiff to describe any health problems that prevent her from working, plaintiff only mentioned her bipolar disorder (AR 349). Plaintiff has not argued before now that her disability stems from anything other than her mental impairments, and plaintiff presented no evidence to the ALJ or to this court that her arthritis affects her ability to work, either alone or in combination with her bipolar disorder. There is substantial evidence that plaintiff is not disabled due to her arthritis. Further, as defendant points out (#14, p. 9), the ALJ found that plaintiff could only perform light work (AR 14, finding 7), indicating that the ALJ did consider plaintiff's exertional impairment in determining that plaintiff was not disabled.

### 3.     Possible side effects

10

Plaintiff also argues that the ALJ failed to take into consideration the possible side effects of plaintiff's medications. Contrary to plaintiff's assertion that the ALJ did not ask questions with regard to potential side effects of plaintiff's medications, the ALJ specifically asked plaintiff if she suffered from side effects (AR 345). Plaintiff replied that she did not suffer from bad side effects and the only side effects that she had experienced were weight gain and hair loss. *Id*.

Plaintiff's medical records do not indicate she reported severe side effects. In her February 16, 2005, appeal for reconsideration, plaintiff reported as side effects of her medications cloudiness, mood swings, and sleepiness (AR 135). In her April 1, 2005, appeal, plaintiff reports only hair loss as a side effect (AR 142). At an April 25, 2005, appointment with her physician, plaintiff reported hair loss, upset stomach, and mood swings as side effects (AR 252). On February 28, 2005, plaintiff reported to her physician that she was able to control her upset stomach by drinking seltzer and only listed hair loss as a side effect (AR 254-55). Additionally, plaintiff did not report any side effects at visits to her physician on January 6, 2005, December 20, 2004, or November 3, 2004 (AR 257, 259, 262).

The ALJ fulfilled his duty to develop the record by asking plaintiff about her side effects and by specifically considering the effect of plaintiff's medications "in reaching an ultimate conclusion regarding the combined effect of nonexertional restrictions upon the ability to perform gainful activity" (AR 16). Based on plaintiff's medical records and her own testimony, there was substantial evidence that plaintiff suffered from only minor side effects of her medications.

### D.   The hypothetical questions posed to the vocational expert.

#### 1.   Law

A claimant in a disability appeal establishes "a prima facie case of disability by showing that his impairments prevent him from doing his previous job." *Delorme v. Sullivan*, 924 F.2d 841, 849-50 (9th Cir. 1991). Once a claimant has made this showing, the burden shifts to the Secretary of Social Security to show that the claimant can do other substantial gainful activity

available in the national economy considering the claimant's age, education, and work experience. *Id*. at 850. An ALJ can consult with a vocational expert to determine if there are jobs the claimant can perform. "In order for the testimony of a VE to be considered reliable, the hypothetical posed must include all the claimant's functional limitations, both physical and mental." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002).

### 2. Analysis

The ALJ posed two hypothetical questions to the VE during plaintiff's hearing. Hypothetical one stated: "[A]ssume this individual is limited to sitting, standing, walking less than even two hours each in a normal eight hour workday; lifting and/or carrying less than 10 pounds even occasionally who cannot deal with any amount of work stress or the public." (AR 353). Hypothetical two stated: "[A]ssume *this individual could work at jobs involving simple, routine tasks* with occasional, meaning up to one-third of the time, public contact and who could sit, stand, walk six out of eight hours in a normal eight hour workday with normal breaks and lift and/or carry a maximum of 20 lbs. occasionally, 10 lbs. frequently." *Id*. (emphasis added).

Plaintiff argues that the ALJ erred by not including a reference to plaintiff's moderate restrictions in maintaining concentration, persistence and pace (#13, p. 8). Although the ALJ did not include the exact phrase "moderate restrictions in maintaining concentration, persistence, and pace" in his hypothetical to the VE, the ALJ did state that the individual could work at jobs involving "simple, routine tasks." The Ninth Circuit recently found that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, ---F.3d---, 2008 WL 3876589 *4 (9th Cir. 2008). There, the court specifically accepted an Eighth Circuit decision where that court "explicitly rejected a claim that an ALJ's hypothetical describing an ability to do 'simple, routine, repetitive work' failed to capture deficiencies in concentration, persistence, or pace." *Id*., *citing Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001).

Here, the ALJ considered and gave great weight to a Department of Human Resources

Bureau of Disability Adjudication report prepared by Sheri Skidmore, Ph.D., which stated that plaintiff could perform uncomplicated, detailed and simple one or two-step tasks. (AR 17 (ALJ opinion), 242 (Skidmore report)). The ALJ also considered and gave some weight to findings from a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment prepared by Mark Richman, Ph.D. These reports stated that plaintiff had no difficulties maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and that the plaintiff was not significantly limited in the areas of understanding and memory as well as sustained concentration and persistence. (AR 17 (ALJ opinion), 296-313 (Richman reports)). In combining these medical findings, the ALJ determined that plaintiff could only perform jobs involving "simple, routine tasks." This hypothetical is sufficient to capture plaintiff's deficiencies in concentration, persistence, or pace. Therefore, there was substantial evidence supporting the ALJ's reliance on the VE's testimony.

## V. CONCLUSION

Based on the foregoing, the court concludes that:

1. The ALJ obtained a valid waiver of plaintiff's right to representation;

2. The ALJ fulfilled his duty to develop the record by leaving the record open after plaintiff's hearing to allow the plaintiff to supplement it with additional medical records;

3. The ALJ properly considered plaintiff's exertional impairment and the side effects of plaintiff's medications;

4. The hypotheticals the ALJ posed to the VE were sufficient to capture all of plaintiff's deficiencies and there was substantial evidence supporting the ALJ's reliance on the VE's testimony.

The parties are advised:

1.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation

within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand (#13) be **DENIED** and defendant's cross motion to affirm the Commissioner's final decision (#14) be **GRANTED**.

**DATED:** October 6, 2008.

_____
**UNITED STATES MAGISTRATE JUDGE**